A. M. CAMPAU REALTY CO. v. JAHN.

CORPORATIONS—REORGANIZATION—NONASSENTING BONDHOLDER.
Bondholder under trust mortgage *held*, entitled to sue for interest due on her bonds where, notwithstanding she had deposited her bonds with bondholders' protective committee pursuant to an agreement authorizing the committee upon assent of holders of 51 per cent. of the certificates of deposit to approve a plan of reorganization of corporate mortgagor, she had not consented to plan of reorganization effected by trustee, mortgagor and committee and approved by the public debt commission whereby it was required that holders of 80 per cent. of the outstanding bonds must specifically consent to the proposed plan, such consent was obtained but defendant bondholder's bonds were listed among those held by nonassenting parties.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted April 2, 1940. (Docket No. 22, Calendar No. 40,972.) Decided June 3, 1940. Rehearing denied September 6, 1940.

Bill by A. M. Campau Realty Company, a Michigan corporation, against Cecilia Jahn and Union Guardian Trust Company, trustee, to have defendant Jahn decreed to have assented to modification of a bond issue, for an injunction restraining an action at law, to require delivery of bonds, and for other relief. Horace B. Peabody intervened. Decree for plaintiff. Defendant Jahn appeals. Reversed.

*McLeod, Fixel & Fixel,* for plaintiff.

*Joslyn, Joslyn & Joslyn* for defendant Jahn.

McAllister, J. The A. M. Campau Realty Company, a Michigan corporation, brought a suit in equity to restrain defendant Cecilia Jahn from proceeding in an action at law to recover interest on certain bonds issued by it, and to reform a certain modification of a trust mortgage in which defendant was classified as a nonassenting bondholder. The interests of the other above-named parties appear hereafter and are not of primary importance in the suit. The trial court granted reformation of the modification agreement and enjoined defendant Jahn from the prosecution of her suit at law. She appeals.

On November 1, 1926, the A. M. Campau Realty Company issued its first mortgage bonds in the amount of $500,000, with interest at 5½ per cent., and the date of maturity November 1, 1940. The bonds were secured by a trust mortgage executed by the A. M. Campau Realty Company to the Guardian Trust Company, as trustee. The trustee's interest has now passed to the Union Guardian Trust Company, as successor trustee. Defendant Jahn was the owner of four $1,000 bonds of the above-described issue.

About July 1, 1932, it became apparent that due to prevailing economic conditions the A. M. Campau Realty Company would be unable to meet payments of principal and interest as the bonds matured. A bondholders' protective committee was accordingly organized to secure cooperation between the A. M. Campau Realty Company and the bondholders for the purpose of protecting the interests of both by reorganization or adjustment. At the solicitation of the bondholders' committee, defendant Jahn deposited her bonds, with a letter of transmittal signed by her which contained the following stipulations:

"To Thaddeus Walker, George R. Cook, Catherine V. H. Wells, bondholders' protective committee, acting under agreement dated July 1, 1932, for first mortgage and leasehold five and a half per cent. serial gold bonds of A. M. Campau Realty Company dated November 1, 1926. Gentlemen: The undersigned as the owner thereof hereby deposits with you bonds of the above issue in the principal amount of $4,000. * * * To cancel registration on said bonds there is inclosed herewith properly executed assignment blank with signatures guaranteed. Said bonds are deposited under and in accordance with the terms of the aforesaid bondholders' protective agreement relating to the deposit of said bonds. The undersigned further expressly assents to all terms and provisions of said agreement and to any amendments to said agreement made as provided therein and hereby becomes a party thereto. Please issue your certificate of deposit and deliver as indicated below. Name Cecilia Jahn, address 434 Cadieux road, Grosse Pointe, Michigan."

The agreement for the bondholders' committee, after providing that it was made between certain bondholders as members of the committee and such other bondholders as would become parties to the agreement, provided that the committee, acting on

behalf of the bondholders, would accept the deposit of bonds in escrow; and such depositing bondholders would thereby name the committee its attorney-in-fact and agent to cause to be done whatever the committee in its discretion deemed proper to protect and safeguard their mutual interests. The agreement, after providing for the deposit of such bonds and the execution to depositing bondholders of certificates therefor, provided that the committee would be empowered to prepare and adopt a plan "and agreement for the collection or adjustment or exchange of the bonds deposited hereunder and/or for the reorganization of the maker and/or the readjustment of the debt of the maker, including the bonds deposited hereunder, in such form and containing such terms and provisions as the committee, in its uncontrolled discretion may determine, or the committee may approve and adopt any such plan or agreement, although not prepared by it. * * *

"Section 3. When the committee shall have prepared and adopted any such plan or agreement, a copy thereof shall be mailed by the committee to each depositor at his address as the same shall appear on the books of the committee.

"Any holders of a certificate of deposit may, within 20 days from the date of the mailing of said notice by the committee, file with the committee notice in writing that such holder dissents from said plan and agreement. If, within such period of 20 days after the mailing of such notice, holders of outstanding certificates of deposit, representing 50 per cent. in principal amount of the deposited bonds and coupons shall so file notice of dissent from any such plan and agreement, such plan and agreement shall not become effective, and the committee may thereafter, from time to time, prepare and approve and adopt modifications or supplements thereto, or other plans

and agreements, and give notice thereof as aforesaid. If, however, within such period of 20 days from said mailing of notice, holders of outstanding certificates of deposit, representing 50 per cent. in principal amount of the deposited bonds and coupons, shall not file in writing with the committee notice of dissent as aforesaid, or if at any time within the 20 days above limited, the holders of 51 per cent. in principal amount of the outstanding certificates of deposit shall file with the committee notice of their approval of and assent to such plan and agreement, then in every such case such plan and agreement shall be binding upon the holders of certificates of deposit, all of whom shall be conclusively and finally deemed for all purposes to have assented to such plan and agreement, whether they have expressedly assented thereto or not, or whether they received actual notice or not, and be irrevocably bound and concluded by the same.''

On May 1, 1933, the A. M. Campau Realty Company defaulted on its semiannual interest payments. The bondholders' committee had received in excess of 51 per cent. in interest of the outstanding bonds, so that it was, therefore, entitled to act for the depositing bondholders under the terms of the agreement.

On October 20, 1936, the A. M. Campau Realty Company presented a plan of reorganization to the public trust commission, and on the same date the bondholders' committee sent notice to all bondholders advising them of the proposed plan, and notifying them of a public hearing upon it before the public trust commission, to be held November 16, 1936. The bondholders were also advised in the notice that, unless they filed a dissent or withdrew their bonds, the committee would vote to approve and accept the plan of reorganization. However, at the time of the meeting, the public trust commission refused to ap-

prove the plan of reorganization unless certain
amendments were made. These were assented to by
the A. M. Campau Realty Company; and on Decem-
ber 29, 1936, the commission entered an order approv-
ing the amended plan of reorganization, but provid-
ing that it should not become operative unless as-
sented to thereafter by the holders of at least 80 per
cent. in principal of the $109,500 in bonds then out-
standing. There were certain other bonds outstand-
ing, but they were in the hands of one who had pur-
chased them for the A. M. Campau Realty Company;
and it was agreed that such bonds were subordinated
and payable only after the other bonds. Their status
is of no concern in the present case, which can be
determined without reference to such subordinated
bonds.

After the order of the trust commission, the bond-
holders' committee, on February 8, 1937, sent a notice
to the bondholders with reference to the amended
plan of reorganization. This notice, in part, stated:

"The committee has also been advised that the
mortgagor company, inasmuch as this plan and the
trust mortgage as amended in accordance therewith
will not be binding upon or affect the rights and
remedies of holders of nonassenting bonds, has
agreed with the Union Guardian Trust Company, as
trustee, that as protection to the accepting bond-
holders and to the trustee in its corporate capacity,
it will, on the date the reorganization plan is declared
operative, on notice from the trustee, deposit with it
under a separate agreement cash or collateral satis-
factory to the trustee for the purpose of and in an
amount sufficient for the protection not only of assent-
ing bondholders and their lien on the mortgaged
security, but also of the trustee in its corporate
capacity against any damage or liability whatso-
ever. * * *

"Enclosed is a form for your assent to and approval of the plan of reorganization as amended."

Thereafter another similar notice was sent to the bondholders. Defendant, however, did not reply to either of these notices. On April 16, 1937, the trustee received sufficient consents to the plan to total 80 per cent. of the $109,500 in principal of outstanding bonds; and on August 31, 1937, the approved and modified agreement was entered into between A. M. Campau Realty Company and the trustee.

Defendant Jahn at no time filed assent to any of the plans of reorganization, unless it could be said that her agreement contained in the letter transmitting her bonds to the committee was such an assent. But plaintiff contends that this letter constituted the requisite consent to the acceptance of the modified plan of reorganization. Such claim embodies the sole issue in this case.

On April 16, 1937, after receipt by the trustee of such assents to the plan as approved by the trust commission, the attorney for the A. M. Campau Realty Company met with the attorneys for the trustee and with the secretary of the bondholders' committee to draft the instrument modifying the original mortgage. Several successive drafts of the instrument were made over a period of three months, with the eventual result that the agreement amending and extending the original mortgage provided for the payment of the bonds and interest to the assenting bondholders, according to certain terms; and further expressly recognized that the amended mortgage agreement did not alter or modify certain bonds, therein described by number, and did not affect the rights afforded to the owners of such bonds under the original mortgage. The instrument referred to an

exhibit enumerating the bonds of defendant under the heading of "nonassenting bondholders;" and expressly excluded application of the modified agreement to such bonds. Simultaneously with the execution of the amended mortgage agreement, the A. M. Campau Realty Company entered into an agreement with the trustee depositing the securities for the purpose of paying any judgment recovered by the nonassenting bondholders therein described, for the purpose of protecting the assenting bondholders, their mortgage security, and the trustee. The above-mentioned exhibit in the modified mortgage agreement was prepared by Horace B. Peabody, executive vice-president of the A. M. Campau Realty Company and also the designee of the company for the subordinated bonds previously mentioned. On the hearing he testified that he included defendant Jahn's bonds in the schedule under the heading of nonassenting bondholders on the advice of the counsel for the bondholders' committee. Mr. Peabody stated that he knew such classification of "nonassenting bondholders" included those who had deposited their bonds with the committee, but had not assented in writing to the plan of reorganization. It further appears that the trustee required not only the deposit of bonds with the committee, but the written assent by bondholders to the plan of reorganization; and that it would not have executed the modified mortgage agreement if such nonassenting bondholders would be therein included as bound by its terms.

From all the evidence, it appears that it was clearly understood and after considerable deliberation definitely agreed between the representatives of the A. M. Campau Realty Company, the bondholders' committee, and the trustee that such nonassenting bondholders, specifically including defendant Jahn,

were not bound by the modified mortgage agreement, and could not be bound without written consent to the plan authorizing it. It is true that defendant Jahn entered into agreement with the bondholders' protective committee. But subsequent thereto the trust commission had specifically required consent to the plan of reorganization by the holders of 80 per cent. in principal amount of the outstanding bonds before it could become effective; and it was the understanding of the A. M. Campau Realty Company, the committee, and the trustee that such consent meant consent to the plan of reorganization. It was because of this fact that the mortgage agreement which was authorized under the plan of reorganization provided for the deposit of securities for the payment of any judgments secured by such nonassenting bondholders. There is no claim of fraud or mistake to justify reformation of the modified agreement. The bondholders' committee is not a party to this suit and apparently is not interested in its outcome. The trustee, in its answer, sets up that it was informed that only bondholders assenting in writing to the modified agreement could be classified as assenting bondholders, and is content with asking construction of the transaction.

It appears that on January 25, 1938, the trustee wrote defendant Jahn, requesting that she surrender her certificate and secure the return of her bonds. She complied with this request, and the bonds returned to her bore no indication that they were affected by or subject to the modification agreement. Defendant Jahn is not a party to any group-creditors' contract agreeing to the modification agreement, and was never so considered by any of the parties in interest. She is entitled to sue for the interest due on the bonds.

The decree of the trial court reforming the modified trust agreement and restraining defendant Jahn from proceeding in her action at law is vacated, with costs to defendant.

Bushnell, C. J., and Potter, Chandler, North, Wiest and Butzel, JJ., concurred.  Sharpe, J., did not sit.